# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN H. GUIN, JR.,

    Plaintiff,

vs.                                                                Civil No. 97-1306 BB/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed July 30, 1998 [docket # 9]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, who is thirty-six years old, alleges a disability which commenced May 16, 1988, due to heart problems, dizziness, shortness of breath, chest pain, severe fatigue, lower back problems and leg pain.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied Mr. Guin's applications, concluding that although his heart and back problems are severe impairments and he cannot perform past relevant work, Plaintiff is not disabled because he can perform a full range of sedentary work. The Appeals Council denied Mr. Guin's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Plaintiff has worked in the past as a fuel handler and truck driver, work which is considered

medium level work. He has completed the twelfth grade.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to make a proper Listing of Impairments analysis; (2) the ALJ's credibility analysis is not supported by substantial evidence and is contrary to law; (3) the ALJ gave improper weight to Mr. Guin's treating physician's opinion, relying instead upon a one-time, short, consultative evaluation; and (4) the ALJ improperly relied upon the grids in reaching the conclusion that Mr. Guin is not disabled.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)); 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the

listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted).

7. The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Plaintiff's heart condition was first detected when he was eleven years old, requiring a pacemaker. This condition affects Mr. Guin by causing dizziness, a loss of energy, and a drop in blood pressure. Episodes of tachycardia ranging in frequency from 3 to 10 times a month make him feel "totally exhausted" and cause him to want to nap three or four times a week for 30 minutes or even a couple of hours. Tr. at 328-29. Plaintiff takes Inderal for his heart condition. Tr. at 295, 335.

9. His lower back condition dates back to when Plaintiff was 20 or 21 years old, originating from an injury sustained when he lifted a 5 gallon bucket of dirt with a Christmas tree and developed a sharp pain upon twisting. Mr. Guin states that the condition has become progressively worse over time, particularly since about 1991. He describes the pain as sharp,

3

radiating from the center of his back into his right leg and sometimes causing a "temporary paralysis." Tr. at 325-26. Medication (ibuprofen, Motrin) takes the edge off the pain, but does not eliminate it. Tr. at 327.

    10. In December 1987, Plaintiff was fired from his job at the Arizona Public Service because he could not perform the work due to his heart condition. Tr. at 69. Between 1988 and 1990 he worked as a bouncer at a club and a roofer, but quit these positions because of his back and "too many tachycardia attacks." Tr. at 323-24. He had no employment between 1990 and 1996 because he was incarcerated for violating the terms of his probation. He told the ALJ at the hearing that the reason he violated his probation was because he failed to maintain full-time employment. Tr. at 325.

    11. Prison medical records indicate that in 1993 and 1994, Plaintiff participated in softball and heavy exercise. Tr. at 140, 148. However, in 1995, his back condition precluded some sports activities and heavy lifting. Tr. at 219. He states that he has a very limited ability to sit, stand and walk (he can stand 5 to 10 minutes and walk from 5 to 15 minutes before his back pain forces him to sit). Tr. at 330.

**First Alleged Error**

    12. Plaintiff first alleges that the ALJ failed to make a proper Listing of Impairments analysis. He contends that his impairment meets the requirements of Listing 1.05(C)(2) (Disorders of the Spine). Even assuming that the Plaintiff had a "vertebrogenic disorder" as defined by Listing 1.05(C), the record fails to show evidence supportive of the mandatory two

4

corollary requirements in the listing.[1]

13. I find that the orthopedic evidence reviewed by the ALJ does not support Plaintiff's contention on this issue. The medical report of Dr. Spaeth dated August 1996 opined that Mr. Guin has "minimal degenerative disc disease" at L3-4 and L4-5, with a "stable" lumbar spine on flexion and extension. Tr. at 312. Likewise, an earlier examination by Dr. Altman on December 1995 revealed that Plaintiff had full range of back motion. Tr. at 298. Dr. Edward Benzel's August 1996 radiological report stated that Plaintiff had a "broad based disc bulge" at L4-5 "without significant canal stenosis." Tr. at 308.

14. An impairment that manifests only some of the listed criteria, no matter how severely, does not qualify. See Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria); see also SSR 83-19. Because Plaintiff has not satisfied all the requirements in the listing, he cannot be considered disabled at this step. Further, Plaintiff's subjective symptoms alone are not considered as listing criteria. A determination of disability at step two must include specific medical findings, which here do not equal a listed impairment. See 20 C.F.R. §§ 404.1525(c); 416.925(c). Thus, Plaintiff has not met his burden at this level in the sequential evaluation.

**Second Alleged Error**

15. Plaintiff contends that the ALJ's credibility analysis is not supported by substantial

---

[1] These two requirements are:
 1. Pain, muscle spasm, and significant limitation of motion in the spine; *and*;
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. (emphasis supplied).

evidence and is contrary to law. I find without difficulty that the ALJ based his conclusion on the correct legal standard, which requires that a nexus be found to exist between a medically determinable physical or mental impairment and the alleged symptoms, such as pain, before examining the broad factors that go into a credibility inquiry. Tr. at 17; see Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.1994) (citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir.1987)).

16. Second, the ALJ did not rely on, as Plaintiff argues, the forbidden "sit and squirm test." Mem.Brf. at 5. Plaintiff contends that the ALJ applied an erroneous legal standard in stating: "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has the opportunity *to observe whether the person seems to be disabled*" (emphasis supplied by Plaintiff).

17. Contrary to Plaintiff's position, however, the phrase is an accurate, if not verbatim, statement of just one of the several factors the ALJ should consider in making a credibility determination. See Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988)) ("When determining the credibility of pain testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, . . . *subjective measures of credibility that are peculiarly within the judgment of the ALJ*, . . .") (emphasis supplied).[2] In this case, the ALJ believed that Plaintiff "exaggerates his allegations of pain to persuade this court to erroneously find total disability. [He] prevaricates his symptoms and description of pain." Tr. at 19.

18. The ALJ found that Mr. Guin's subjective allegations are "unsupported by the evidence of record considered as whole." Tr. at 16. Looking back at the "longitudinal medical

---

[2] The ALJ referred to legal authority in making this statement. Tr. at 17.

6

history," particularly the reports of Dr. Benzel and Dr. Ramo (Tr. at 292, and see discussion, infra) which concerned Plaintiff's back and heart impairment, respectively, the ALJ noted that the medical evidence was inconsistent with Plaintiff's symptoms of disabling pain. See 20 C.F.R. §§ 404.1529, 416.929 (In determining disability, all symptoms are considered including pain, and the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence). I find that the medical reports and findings support this conclusion.

19. Plaintiff also contends that the ALJ mischaracterizes his independence and abilities when looking at his daily activities. Plaintiff looks at the issue from what he cannot do (he does not do housework; he can water his father's lawn only from a sitting position in a lawn chair when the weather's nice); where the ALJ instead notes the various activities Mr. Guin was capable of performing ("clean, cook, shop and care for his personal needs," Tr. at 18).

20. While such activities would be insufficient upon which to base a finding that the Plaintiff was capable of work, Broadbent v. Harris, 698 F.2d 407 (10th Cir.1983)(holding that sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity), nevertheless, claimant's activities may be considered in discounting subjective complaints. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

21. Here, however, the ALJ did not rely on Plaintiff's daily activities in coming to the conclusion that he was not disabled. Rather, he looked to other factors which should also be considered in making this determination.[3] Thus, I find that the ALJ's credibility analysis and

---

[3] The ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain,

determination is based on substantial evidence and the correct legal standard.

**Third Alleged Error**

22. Plaintiff next alleges that the ALJ gave improper weight to Mr. Guin's treating physician's opinion, relying instead upon a one-time, short, consultative evaluation by Dr. Barry Ramo. Plaintiff contends that the ALJ should have relied on the treating physician who saw Plaintiff for his back problems.[4] However, the opinions of Dr. Ramo, who is a heart specialist, are accorded more weight than those of a treating physician who has been treating Plaintiff's back impairment, where the issue is Plaintiff's heart impairment. See Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995) (Specialist's opinions accorded more weight); 20 C.F.R. §§ 404.1529(d)(5) & 416.927(d)(5)(1995).

23. Plaintiff's implication that the report and opinion of Mr. Guin's treating physician presents evidence which would support a finding of disability is unfounded. The ALJ did not ignore this other evidence, but found it to be consistent with a finding of nondisability and with the determination that the Plaintiff could perform sedentary work.[5] See Baker v. Bowen, 886 F.2d 289, 290 (10th Cir. 1989) (citing Ray v. Bowen, 865 F.2d 222, 226 (10th Cir.1989) ("[t]he ALJ must determine the claimant's eligibility for disability benefits in light of the entire record"). I find that this allegation of error has no merit.

---

functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

[4] Plaintiff does not specify who the physician is -- I assume he refers to Dr. Benzel, who treated him for his back problems.

[5] Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. SSR 83-10; 20 C.F.R. § 404.1567(a).

8

**Fourth Alleged Error**

24. Last, Plaintiff alleges that the ALJ improperly relied upon the grids in reaching the conclusion that Mr. Guin is not disabled. However, the presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994); see also Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (presence of nonexertional impairment does not preclude use of grids if nonexertional impairment does not further limit claimant's ability to perform work).

25. The ALJ noted that although Plaintiff has pain, not all pain is disabling. Tr. at 16; See Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). Because the ALJ found that Plaintiff can work without a significant restriction from pain, Tr. at 19, it was proper for the ALJ to rely on the grids.

26. Moreover, the ALJ was not obliged to refrain from using the grids based on Plaintiff's subjective complaints of pain, given his noncredibility determination. See Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988) (ALJ may rely on the grids when evaluating non-exertional impairment if plaintiff's testimony is not entirely credible). Thus, the ALJ did not err in relying on the grids to find Mr. Guin not disabled.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket # 9] be DENIED and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

9

_____
UNITED STATES MAGISTRATE JUDGE